## Ike Loggins v. The State.

### No. 1515. Decided June 26, 1912.

**1.—Mortgaged Property—Continuance—Impeachment.**

Where, upon trial of fraudulently disposing of mortgaged property, the absent testimony was of an impeaching character, and the same kind of testimony was introduced on trial, and the same was not probably true, there was no error in overruling the motion for continuance.

**2.—Same—Charge of Court—Defensive Theory.**

Where, upon trial of fraudulently disposing of mortgaged property, there was some evidence that the prosecutor had agreed with defendant to release the lien upon the alleged property, and the court in a proper charge submitted this theory of the case and instructed the jury to acquit the defendant in the event of a reasonable doubt that defendant believed such release to have been made, there was no error.

**3.—Same—Charge of Court—Completed Trade.**

Where, upon trial of fraudulently disposing of mortgaged property, there was no question that the trade between defendant and prosecutor and the agreement to give a mortgage on the alleged property was completed, there was no error in the court's failure to submit this issue.

Appeal from the District Court of Erath.    Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of fraudulently disposing of mortgaged property; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*B. E. Cook,* for appellant.—On the question of court's failure to grant continuance:    Rushing v. State, 137 S. W. Rep., 372; Massey v. State, 40 S. W. Rep., 726.

On the question of the court's charge in not submitting defensive theory:    Meuly v. State, 26 Texas Crim. App., 274; Nalley v. State, 30 id., 456; Wimberly v. State, 22 id., 506; Lynch v. State, 24 id., 350; Thomas v. State, 34 Texas Crim. Rep., 481.

*C. E. Lane,* Assistant Attorney-General, and *Jno. J. Hiner,* District Attorney, for the State.—On question of continuance:    Garrett v. State, 37 Texas Crim. Rep., 198; Rodgers v. State, 36 id., 563; Butts v. State, 35 id., 364.

HARPER, Judge.—Appellant was indicted, tried and convicted of fraudulently disposing of mortgaged property, his punishment being assessed at two years in the penitentiary.

From the statement of facts it appears that appellant had no team, and being desirous of securing one, Ed Wood agreed to sell him one mule and loan him another.    For the mule he purchased he agreed to pay $120 and agreed to execute a note and give a mortgage on the mule, and to get C. C. Britton and Mr. Brock to sign the note with him.    At the time Mr. Wood delivered the mule to him, appellant

signed the note and mortgage, and took the note to get the signatures of Britton and Brock. In a short while he returned the note to Wood with Britton's name signed as security, but stated that Brock had declined to sign it. Thus far, both the State and defendant agreed, but from this on there is a sharp conflict in the testimony. Ed Wood, the State's witness, says that at the time appellant returned to him the note with only Britton's name signed as security, he delivered the note and mortgage to him, and appellant told him he would give him a mortgage on two bales of cotton in addition to the mortgage on the mule, but had never done so. It is proven, and about which fact no question is raised, that subsequent to the time he secured the mule from Wood appellant sold the mule to Ed Bybee for $120, and appropriated the money to his own use.

Appellant says when he returned the note and mortgage to Wood, having failed to get Brock's signature, that it was agreed between him and Wood that he was to give a new mortgage on the mule and two bales of cotton to be raised on the Cage farm, and he was willing at all times to do so, but Wood told him afterwards he did not want a mortgage on cotton raised on the Cage farm, giving reasons therefor, and that they made a new trade in which Wood agreed to sell him the mule, and let him work it out, working with Wood on the hay press in the spring and summer of 1911. The mule having been sold in February by appellant to Bybee, this indictment was returned against him on June 20, 1911.

The first ground of error alleged is that the court erred in overruling appellant's first application for a continuance on account of the absence of the witness Gus Nail, who had been subpoenaed, and as to whom it might be said the diligence was sufficient. The facts stated it is expected to be proven by this witness would tend to impeach the testimony of the State's witness Wood, and it is claimed would support the evidence of appellant; that is, that the note and mortgage signed by appellant, with Britton as security, were not accepted by Wood. It may be said that the rule adopted by this court is that no error is presented when the absent testimony will only tend to impeach the testimony of the State's witness, that the witness had made statements contradictory to those testified to by him on the trial. (Garrett v. The State, 37 Texas Crim. Rep., 198; Rodgers v. State, 36 Texas Crim. Rep., 563; Butts v. The State, 35 Texas Crim. Rep., 364.) In some instances where the testimony of the absent witness would not only tend to impeach the testimony of the State's witness, but the statement would also be strongly corroborative of the testimony of appellant, it has been intimated that the continuance should be granted. In this case it is stated in the application that the witness Gus Nail would have testified to a conversation with Wood in which Wood had stated the first contract was done away with, and this would corroborate the testimony of appellant. However, the same conversation was testified to on the trial by R. S. Nail

and T. V. Nail. We do not think the court erred in overruling the application. While it is true that on the first application for a continuance, it is not a question of whether the testimony is cumulative or not, if material, yet it is an exception to the rule that a case will not be continued to secure impeaching testimony, where the impeaching testimony is strongly corroborative of defendant's testimony, and it does not go to the extent that where the same testimony is proven by two witnesses on the trial a continuance will be granted to secure a third witness to testify to the same impeaching facts. The evidence shows, beyond question, that appellant secured possession of the mule by executing the mortgage, and when he delivered it to Wood it became a binding obligation until released by Wood, and the testimony that it is desired to be proven by this witness would go not so much to prove that a release of the mortgage had been given, as that it has not been accepted by Wood, when, as a fact, it was delivered by appellant to Wood, and by him kept and filed with the county clerk of Erath County. With the record in this condition we can not hold that the court was not justified in coming to the conclusion that he did, as shown by his qualification of the bill, that the testimony was not probably true. Appellant admitted that he received possession of the mule by agreeing to give a mortgage thereon; that he did execute and deliver the mortgage, and he should not now be permitted to say that in fact he did not do so. In a civil suit between Wood and himself he would not be allowed to do so—the only question would be, after the execution and delivery of the mortgage, was it in fact released as claimed by appellant? If it was released before appellee sold the mule to Bybee, he would be guilty of no offense, no matter how morally wrong his acts were. On this issue the court instructed the jury:

"Moreover, gentlemen, although you may believe from the evidence in this case beyond a reasonable doubt that the defendant sold the mule described in the mortgage set out in the indictment herein, and that prior to the time he sold the same to Bybee that he had executed a mortgage and lien in writing upon said mule, still if prior to the time defendant sold said mule, the owner and holder of said lien and mortgage, Ed Woods, had agreed with defendant to release said lien on said mule, or if you have a reasonable doubt as to whether or not he did agree to release said lien on said mule, or if the defendant believed he had agreed to release said lien and mortgage on said mule, or if you have a reasonable doubt as to whether said defendant so believed, you will give him the benefit of such doubt in either event and acquit him."

This presented in an admirable way the defensive theory of defendant, and the jury, finding against this contention, we do not think there is any error pointed out in the record.

The criticism of the court's charge that it failed to submit the issue of whether or not there was a completed trade, presents no error. It

is unquestioned in the evidence that appellant bought the mule from Wood, agreeing to give a mortgage thereon; that he executed and delivered a mortgage in writing on the mule to Wood; that Wood was permitted to keep possession of the mortgage, and it was introduced in evidence, and the signature of appellant to it was proven beyond dispute. The jury, finding it had not been released, and that appellant had no reason to believe that it had been agreed to be released, there is no error presented that should call for a reversal of the case.

The criticisms of the court's charge are without merit, and there are no exceptions in the record to the testimony introduced. The judgment is affirmed.

*Affirmed.*